Christopher J. Dalton
BUCHANAN INGERSOLL & ROONEY PC
Incorporated in Pennsylvania
550 Broad Street, Suite 810
Newark, New Jersey 07102
*Attorneys for Plaintiff,*
  *Shamrock Realty Inc. d/b/a*
  *Ocean Pointe, Realtors*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAMROCK REALTY INC. d/b/a OCEAN POINTE, REALTORS, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | Civil Action No.: |
| v. | **COMPLAINT** |
| DEMORO OCEAN POINT LLC, d/b/a KELLER WILLIAMS REALTY OCEAN POINT, NJ and KELLER WILLIAMS REALTY, INC., | |
| Defendants. | |

Plaintiff, Shamrock Realty Inc. d/b/a Ocean Pointe, Realtors ("Ocean Pointe"), as and for

its Complaint against Defendants, states as follows:

### Parties

1.      Ocean Pointe is a New Jersey corporation, with a principal place of business at

555 Washington Boulevard, Sea Girt, New Jersey 08750.

2.      Defendant Demoro Ocean Point LLC d/b/a Keller Williams Realty Ocean Point,

NJ ("KW Ocean Point") is a New Jersey limited liability company, with a principal place of

business at 1513 Richmond Avenue, Point Pleasant, New Jersey 08742.

3.      Defendant Keller Williams Realty, Inc. ("KW" or "Keller Williams") is a Texas

corporation, with a principal place of business at 1221 South Mopac Expressway, Suite 400,

Austin, Texas 78746.  KW owns and franchises real estate sales offices.

## Jurisdiction and Venue

4.      This is a civil action for damages arising out of Defendants' violation of Ocean Pointe's service marks and goodwill in violation of the Lanham Act, 15 U.S.C. §1051 et seq., New Jersey's Fair Trade Act, N.J.S.A. 56:4-1, and the common law of New Jersey.  Ocean Pointe's claims arise under 15 U.S.C. § 1114 for infringement of its registered service mark and under 15 U.S.C. § 1125(a) for false designation of origin and unfair competition.  Plaintiff's claims also arise under the common law of New Jersey for unfair competition (e.g. misappropriation, palming off, etc.).

5.      This Court has federal-question jurisdiction over the controversy pursuant to 28 U.S.C. § 1331.  This court has supplemental jurisdiction over Ocean Pointe's state-law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this District under 28 U.S.C. § 1391 because defendant KW Ocean Point is located in this District, defendant KW has engaged in activities in this District related to the claims asserted herein, and a substantial part of the events or omissions giving rise to the claims occurred in Monmouth and Ocean Counties.

## Factual Background

7.      Ocean Pointe is a full-service "boutique" real estate brokerage located in Sea Girt, New Jersey, serving southern Monmouth and northern Ocean Counties.  Ocean Pointe markets homes for sale and rent in communities such as Sea Girt, Brielle, Manasquan, Point Pleasant, Point Pleasant Beach, Mantoloking, Spring Lake, and Lavallette, among others.

8.      Ocean Pointe was founded in 1992 and has, since at least 1996, used the tradename "Ocean Pointe" continuously.  Since opening, Ocean Pointe has helped thousands of local residents buy and sell homes and other properties.  Ocean Pointe has also helped residents

rent properties.  In 2017, Ocean Pointe brokered real estate sales in excess of $75,000,000 and rentals of about $2,500,000.

9.     Over the last 25 years, Ocean Pointe has helped thousands of people buy and sell homes in southern Monmouth County and northern Ocean County.  Ocean Pointe has had over $1 billion in sales in over 2,300 transactions since 1992.  As a stand-alone real estate brokerage, Ocean Pointe's business is dependent upon its recognition and reputation in the community. Throughout this time period, Ocean Pointe has used its service marks "OCEAN POINTE," "OCEAN POINTE, REALTORS," and other marks using "OCEAN POINTE" as a badge of origin for Ocean Pointe's services.  Consumers in and around Monmouth and Ocean Counties recognize the mark "OCEAN POINTE" and "OCEAN POINTE, REALTORS"  as used in connection with real estate brokerage services as referring to the services provided by Ocean Pointe.

10.     After a long period of use in and around its Sea Girt base of operations, Ocean Pointe filed a service mark application with the U.S. Patent and Trademark Office seeking registration of its OCEAN POINTE, REALTORS mark.  After examining this service mark application, the U.S. Patent and Trademark Office issued a service mark certificate for Ocean Pointe's OCEAN POINTE, REALTORS mark on July 3, 2018 as U.S. Service Mark Registration No. 5,506,140.  This registered service mark is for use in connection with "Residential real estate listing on a multiple listing service; Real estate rental services, namely, rental of residential housing listed on a multiple listing service; Residential real estate agency services."   A true and correct copy of this registration is attached hereto as Exhibit 1.

11.     In or around December 2016, Defendants opened a real estate office in Point Pleasant, New Jersey, which they named "Keller Williams Realty Ocean Point, NJ."

12.     KW Ocean Point is located less than four miles from Ocean Pointe.

13.     KW Ocean Point's website contains listings for "Featured Properties" in communities such as Manasquan, Point Pleasant, Point Pleasant Beach, and Brielle, among others.  These are the same communities that Ocean Pointe has served for over 25 years.

14.     KW Ocean Point and Ocean Pointe utilize the same types of marketing and promotional activities that target consumers of realty services in the same geographical region. These marketing and promotional activities include signage positioned on various properties in the same geographical region that promote and advertise their realty services to the same consumers.  KW Ocean Point's signage uses "Ocean Point."  Ocean Pointe's signage and other promotional materials use Ocean Pointe's service marks OCEAN POINTE and OCEAN POINTE, REALTORS.

15.     Below is a comparison of the signage used by Ocean Pointe and KW Ocean Point, which shows how KW Ocean Point uses "Ocean Point" in a misleading way to palm off the OCEAN POINTE and OCEAN POINTE, REALTORS service marks:

| **Ocean Pointe Sign** | **KW Ocean Point Sign** |
|---|---|
|  | |

 

16.     The "Keller Williams Realty Ocean Point" website, having the URL

http://mc1043.yourkwoffice.com/ for its "Ocean Point" realty office, uses "Ocean Point, NJ" in

large, prominent text.   KW owns the domain for this website and operates this website.  KW

operates this website to solicit business for its KW Ocean Point franchisee.  This website is

directed to consumers in and around Monmouth and Ocean Counties as well as non-resident

consumers looking to move to these counties.  This use of "Ocean Point, NJ" is misleading and

seeks to mislead consumers into believing there is an affiliation between Ocean Pointe and

Keller Williams.  Below is an image of a portion of this webpage

(http://mc1043.yourkwoffice.com/):



17.     The locations "featured" on this Keller Williams website using the misleading "Ocean Point, NJ" term do not identify any property in "Ocean Point, NJ" because there is no such place as "Ocean Point" in New Jersey.

18.     This Keller Williams website has a property search feature available for KW Ocean Point.  This property search is available at the following link:

http://www.mlsfinder.com/nj_momls/kw_1043/index.cfm?action=searchresults&searchkey=d8ac3447-da48-4a69-7bad-ac63f6f66bd1&domain=mc1043.yourkwoffice.com&nSite=Y&so=mc&sr=1.  Below is an image of this webpage having this property search feature:



19. The property search feature offered at the KW Ocean Point website lists a number of locations via a drop-down menu. None of these locations includes an "Ocean Point" location.

20. KW has many offices in New Jersey. KW's offices are generally named after the location in which they exist.

21. For example, KW has several offices in Monmouth County. KW's office in Shrewsbury, located in eastern Monmouth County, is called "Keller Williams Realty East Monmouth."

22. Likewise, KW's office in Holmdel, in central Monmouth County, is called "Keller Williams Realty Central Monmouth."

23. KW's office in Morganville, in western Monmouth County, is called "Keller Williams Realty West Monmouth."

24. KW's office in Hoboken is called "Keller Williams Realty Hoboken."

25.     KW's office in Jersey City is called "KW City Life JC."

26.     KW's office in Jackson Township is called "Keller Williams Monmouth/Ocean."

27.     KW's office in Moorestown is called "Keller Williams Moorestown."

28.     KW's office in Cherry Hill is called "Keller Williams Cherry Hill."

29.     KW's office in Voorhees is called "Keller Williams Realty Voorhees."

30.     KW's office in Swedesboro is called "Keller Williams Realty Swedesboro."

31.     KW's office in Vineland, in the heart of Cumberland County, is called "Keller Williams Realty Cumberland County."

32.     KW's office in Wildwood is called "Keller Williams Realty Wildwood Crest."

33.     KW's office in Clinton is called "Keller Williams Real Estate – Clinton Market Center."

34.     KW's office in Morristown is called "Keller Williams Realty Morristown."

35.     KW's office in Wyckoff is called "Keller Williams Realty Wyckoff."

36.     Of 42 market centers that KW has in New Jersey, the majority refer to a geographical location of that market center.  The few KW offices that do not follow this naming convention utilize naming based on pre-existing names of franchisees which were acquired by KW or use a generic location-based term such as "suburban," "city," or "towne square" (such as "Keller Williams Towne Square" in Bernardsville, "Keller Williams City Views Realty" in Fort Lee, or "Keller Williams Suburban Realty" in Livingston).  Only one office deviates from KW's naming convention.  And that is the KW Ocean Point office, which was opened within 4 miles of Ocean Pointe's business in Sea Girt.

37.     There is no location in New Jersey called "Ocean Point."  Defendants purposefully chose to deviate from their typical market-center naming protocol to use "Ocean

Point," a term that mimics Ocean Pointe's service marks.  Defendants' use of "Ocean Point" is essentially identical to Ocean Pointe's OCEAN POINTE and OCEAN POINTE, REALTORS service marks.

38.     Defendants knew of Ocean Pointe's service marks prior to deciding to use "Ocean Point."  Defendants have refused to stop their infringement of the Ocean Pointe service marks even after examples of actual confusion have been brought to their attention.

39.     Defendants chose "Ocean Point" as the name of their Point Pleasant office to copy Ocean Pointe's mark in order to mislead consumers into believing Ocean Pointe was affiliated with Defendants when, in fact, no such affiliation exists.

## ACTUAL CONFUSION EXISTS

40.     Since KW Ocean Point opened its office in Point Pleasant, Ocean Pointe has received multiple calls from customers and potential customers who have asked for agents who work at KW Ocean Point.   In all cases, these customers and potential customers called Ocean Pointe because they saw the KW Ocean Point sign on properties that were being offered for sale and thought that those properties were listed with Ocean Pointe and that Ocean Pointe was providing real estate services related to those properties.  These customers and potential customers were confused due to the KW Ocean Point signage, which uses the nearly identical "Ocean Point" mark that infringes Ocean Pointe's well-known OCEAN POINTE service mark.

41.     Since KW Ocean Point opened, Ocean Pointe has received multiple calls from people thinking that Ocean Pointe was bought out by Keller Williams.  This confusion stems from Defendants' signage as well as other uses of "Ocean Point," which misleads consumers into mistakenly believing Ocean Pointe is affiliated with KW Ocean Point.

42.     As another example, one of Ocean Pointe's client's had a niece who became an

agent at KW Ocean Point.  The niece mistakenly believed that KW Ocean Point was affiliated with Ocean Pointe.  This actual confusion was created due to Defendants' misleading use of "Ocean Point."  Other consumers have had similar experiences and had similar confusion.

43.     For example, on July 26, 2018, Jeff Lee, a client of Ocean Pointe, had a conversation with Debra Serafin, an agent for KW Ocean Point.  This conversation took place in Point Pleasant Beach.  Mr. Lee understood from Ms. Serafin's use of "Ocean Point" and the use of "Ocean Point" on her business card that Ms. Serafin was an agent of Ocean Pointe.  In their conversation, Mr. Lee asked Ms. Serafin if she worked in a satellite branch of Sea-Girt-based Ocean Pointe Realty.  Ms. Serafin replied that she did not think KW Ocean Point was affiliated with Ocean Pointe.  Mr. Lee was confused due to the use of "Ocean Point" on the KW Ocean Point business cards.  Mr. Lee was so confused that he shared his experience with Ocean Pointe via an email he sent on August 2, 2018 to Joe Riordan of Ocean Pointe.  In this email, Mr. Lee stated that he "wanted to share how very confused I was and share my experience with you. Knowing how hard you have worked to build your successful corporation and brand, it seems that someone has unscrupulously capitalized on naming their business as yours while additionally penetrating market space."

44.     As another example, when Ocean Pointe's agent Megan Schell-Schnurr was introduced to a Keller Williams agent who works out of KW Toms River, the Keller Williams agent confusingly believed Ms. Schell-Schnurr was associated with Keller Williams upon hearing that Ms. Schell-Schnurr was an agent for Ocean Pointe. This actual confusion was created due to Defendants' misleading use of "Ocean Point."

45.     On July 10, 2018, Jane Imburgia, an agent for Ocean Pointe, was showing a client a home in Spring Lakes Heights that was listed with KW Ocean Point.  The client saw the KW

Ocean Point signage on this property and asked Ms. Imburgia, "That's your new office, right?"
The client was confused by the KW Ocean Point sign and, as a result, believed that KW Ocean
Point was affiliated with Ocean Pointe.

46.     In or around August of 2018, Cathy Goetz showed a client a home that was listed
with KW Ocean Point.  As Ms. Goetz and the client drove up to this home, the client asked if it
was true that Ms. Goetz's office (Ocean Pointe) had the listing for the house he was going to be
shown.  The client was confused and mistakenly believed Ocean Pointe had listed the home due
to the KW Ocean Point sign he saw, which misleadingly uses "Ocean Point."

47.     Other agents of Ocean Pointe have had similar experiences with clients and
potential customers, showing that actual confusion has been created due to Defendants'
misleading use of "Ocean Point."

48.     As yet another example of actual confusion, around the end of July 2018, Joe
Riordan–one of Ocean Pointe's owners—was told that an acquaintance's friend had started
working with Ocean Pointe at Ocean Pointe's "new office."  But that friend had actually started
working with KW Ocean Point.  This confusion occurred due to Defendants' misleading use of
"Ocean Point."

### DEFENDANTS REFUSE TO STOP THEIR INFRINGEMENT

49.      Ocean Pointe has repeatedly requested that Defendants cease their use of "Ocean
Point" because it is deceptively similar to Ocean Pointe's service marks.  In so doing, Ocean
Pointe has brought to Defendants' attention different examples of actual confusion that have
occurred due to Defendant's deceptive and misleading use of "Ocean Point."

50.     Since at least February of 2017, just shortly after KW Ocean Point opened, Ocean
Pointe has repeatedly raised with Defendants and their attorneys issues concerning consumers'

likelihood of confusion and actual confusion based on KW's deceptive use of "Ocean Point."  In February of 2017, Joe Riordan of Ocean Pointe contacted Adele DeMoro of KW Ocean Point to initiate discussions with KW Ocean Point concerning KW Ocean Point's misleading use of "Ocean Point" and how this conduct infringed Ocean Pointe's service marks.

51.     Thereafter, counsel for Ocean Point and Defendants had different meetings, conference calls, and exchanged correspondence as Ocean Pointe attempted to resolve this dispute without having to resort to litigation.

52.     Discussions were held between counsel for KW Ocean Point, Sandra Cohen, Esq. of Epstein & Cohen, LLC, and counsel for Ocean Pointe, Scott Servilla, Esq. of Servilla Whitney LLC.

53.     Representatives of Ocean Pointe again met with Defendants in May of 2018 to discuss Ocean Pointe's service mark rights and Defendants' infringement of those rights, which was misleading consumers.  Further discussions were held through August and September of 2018 in which Ocean Pointe consistently insisted that Defendants cease their misleading and infringing use of "Ocean Point."

54.     During those discussions, Ocean Pointe even offered to assist Defendants by contributing to the costs of "re-branding" KW Ocean Point in an attempt to resolve this dispute without litigation and avoid those costs.  Defendants have refused to stop their misleading use of "Ocean Point."

55.     As part of these discussions that have been ongoing since at least February of 2017, counsel for Defendants, Sherry Flax Esq. of Saul Ewing Arnstein & Lehr LLP, sent terms for a proposal of settlement on September 7, 2018.  Defendants refused to stop use of "Ocean Point" in that proposal.

56.     To justify their refusal to stop using "Ocean Point," Defendants have informed

Ocean Pointe that they believe the term "Ocean Point" is geographically descriptive.  This is not

so in view of the many examples of actual confusion, Ocean Pointe's registered service mark,

and consumers' association of the OCEAN POINTE mark with Ocean Pointe's realty services.

Further, "Ocean Point" is not and cannot be descriptive as there is no such location in New

Jersey.  Nor are "ocean point" or "ocean pointe" terms having a known dictionary definition.

57.     Dictionary.com does not provide any definition for "ocean point".  Below shows

an image of a search for definition of "ocean point" via Dictionary.com:



58.     Nor does "ocean point" have a definition in the Merriam-Webster dictionary,

available at www.merriam-webster.com.  Below is an image of the search result for "ocean

point" provided by this dictionary:



59.     As yet another example, "ocean point" is not found in other dictionaries either –

(i) Oxford Dictionary, available at https://en.oxforddictionaries.com/  (ii) Cambridge Dictionary,

available at https://dictionary.cambridge.org/dictionary/ (iii) Collins English Dictionary,

available at https://www.collinsdictionary.com/dictionary/english/dictionary.

60.     To support a claim of geographic descriptiveness, Defendants would have to show

that  the primary significance of the mark is a generally known geographic location, their

services originate in the place identified in the mark, and purchasers would be likely to believe

that their  services originate in the geographic place identified in the mark.  *See e.g.* Trademark

Manual of Examining Procedure ("TMEP") at § 1210.01(a)).

61.     Defendants cannot make this showing.  There is no "Ocean Point, NJ" or "Ocean

Point" located in New Jersey.  Nor is there an "Ocean Point" located where KW Ocean Point

provides services.

62.     A search on Google Maps for "Ocean Point" identifies only one location in the

United States using that designation:  Ocean Point in Boothbay, Maine.



63.    Defendants' reliance on geographical descriptiveness has no support in law or fact.  Defendants deliberately and knowingly decided to use "Ocean Point" in a misleading fashion.

64.    Defendants have intentionally used "Ocean Point" to palm off Ocean Pointe's service marks and misappropriate Ocean Pointe's goodwill and consumer recognition.

65.    Ocean Pointe has no alternative but to file suit because of Defendants' unreasonable refusal to stop use of "Ocean Point" and their confirmation that they will continue to knowingly infringe Ocean Pointe's service marks and knowingly mislead consumers.

## FIRST COUNT

## FEDERAL SERVICE MARK INFRINGEMENT

66.     Ocean Pointe repeats and realleges the foregoing paragraphs as if fully set forth herein.

67.     Defendants' use of "Ocean Point" (e.g.  "Ocean Point, NJ", Keller Williams Realty Ocean Point, NJ", "Ocean Point", etc.) infringes U.S. Service Mark Registration No. 5,506,140 in violation of the Lanham Act (*e.g.*  15 U.S.C. § 1114).

68.     "Ocean Point" as used by Defendants is similar in sight, sound, and meaning to Ocean Pointe's OCEAN POINTE, REALTORS service mark and is used in connection with the same services.  Defendants' use of "Ocean Point" occurs in the same geographical region in which Ocean Pointe operates in order to compete unfairly with Ocean Pointe to provide realty services to the same consumers in this common geographical region.

69.     Defendants' use of "Ocean Point" is likely to cause, and has caused, mistake and confusion in that members of the public are likely to believe, and do believe, that Defendants' realty services originated from or are being provided in association with Ocean Pointe.

70.     Defendants' publicly available website materials, signage, business cards, and other promotional materials that use "Ocean Point" are likely to cause, and have caused, consumers of realty services to believe Defendants are associated with Ocean Pointe.

71.     Defendants' activities complained of herein constitute willful and intentional infringement of Ocean Pointe's registered service mark, are in total disregard of Ocean Pointe's rights, and were commenced and have continued despite of Defendants' knowledge that Defendants' use of "Ocean Point" in connection with Defendants' realty services was and is in direct contravention of Ocean Pointe's rights.

16

**SECOND COUNT**

**FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**

72.     Ocean Pointe repeats and realleges the foregoing paragraphs as if fully set forth herein.

73.     Defendants have willfully infringed Ocean Pointe's service marks (e.g.  OCEAN POINTE and OCEANE POINTE, REALTORS).

74.     Defendants' use of "Ocean Point" is likely to cause, and has caused, mistake and confusion in that members of the public are likely to believe, and do believe, that Defendants' realty services originated from or are being provided in association with Ocean Pointe.

75.     Defendants' website materials, signage, business cards, and other promotional materials use "Ocean Point" in a misleading and false way to confuse consumers into believing Defendants are associated with Ocean Pointe.  Accordingly, Defendants' use of "Ocean Point" in connection with their realty services constitutes unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a).

**THIRD COUNT**

**UNFAIR COMPETITION AND FALSE
DESIGNATION OF ORIGIN UNDER COMMON LAW**

76.     Ocean Pointe repeats and realleges the foregoing paragraphs as if fully set forth herein.

77.     Defendants have willfully infringed Ocean Pointe's service marks that utilize "Ocean Pointe" (e.g. "OCEAN POINTE", "OCEAN POINTE, REALTORS", etc.).  Consumers of realty services are confused and are likely to be confused into believing that Defendants' services originate from Ocean Pointe or that Defendants' services are associated with Ocean Pointe's services based on Defendants' infringing and misleading uses of "Ocean Point" and

"Ocean Point, NJ."

78.     Defendants have knowingly infringed Ocean Pointe's service marks to try to misappropriate Ocean Pointe's goodwill and palm off Defendants' realty services as being the services of Ocean Pointe.

79.     Defendants' use of Ocean Pointe's service marks is likely to cause, and has caused, mistake and confusion in that members of the public are likely to believe, and do believe, that Defendants' realty services originated from or are being provided in association with Ocean Pointe.  Accordingly, Defendants' use of "Ocean Point" constitutes unfair competition and false designation of origin in violation of New Jersey's common law of unfair competition.

## FOURTH COUNT

## VIOLATION OF NEW JERSEY FAIR TRADE ACT

80.     Ocean Pointe repeats and realleges the foregoing paragraphs as if fully set forth herein.

81.     The New Jersey Fair Trade Act, N.J.S.A. 56:4-1, provides that no "merchant, firm or corporation shall appropriate for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals."

82.     Ocean Pointe has invested over 25 years and substantial resources developing recognition and respect in the southern Monmouth County and northern Ocean County real estate market.

83.     Ocean Pointe is well known and respected in the southern Monmouth County and northern Ocean County real estate market.

84.     KW and KW Ocean Point have unlawfully appropriated for their own use Ocean Pointe's name, service marks, reputation, and goodwill.

85.     Consumers of Ocean Pointe's services have been and, absent court intervention, will continue to be confused by KW and KW Ocean Point's unlawful use of Ocean Pointe's name, service marks, reputation, and goodwill.

86.     Ocean Pointe has been and, absent court intervention, will continue to be damaged by KW and KW Ocean Point's unlawful use of Ocean Pointe's name, service marks, reputation, and goodwill.

WHEREFORE, Ocean Pointe demands judgement in its favor and against KW and KW Ocean Pointe as follows:

a.  Defendants be adjudged to have infringed Ocean Pointe's service marks and violated the Lanham Act, 15 U.S.C. § 1125(a), the New Jersey Fair Trade Act, N.J.S.A. 56:4-1, and the common law of unfair competition of the state of New Jersey;

b.  Ocean Pointe be awarded damages in an amount to be determined at trial;

c.  The Court issue an Order prohibiting and permanently enjoining KW and KW Ocean Point from using "Ocean Point", "Ocean Point, NJ" or other similar mark;

d.  That Defendants be required to deliver to Ocean Pointe for destruction all signs and other promotional materials that uses the "Ocean Point" or "Ocean Point, NJ" terms;

e.  Ocean Pointe be awarded its attorneys' fees and costs;

f.  That the damages resulting from Defendants' infringement be trebled by reason of Defendants' willful infringement, together with interest pursuant to 15 U.S.C. § 1117;

g.  That Defendants be required to account for any and all profits derived by them by

reason of the acts complained of in this Count pursuant to 15 U.S.C. § 1117; and

h.   Ocean Pointe be awarded such other and further relief as the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated:                                        **By:**  s/Christopher J. Dalton
                                                          **Christopher J. Dalton**

                                              Christopher J. Dalton
                                              Ralph G. Fischer (*pro hac vice* pending)
                                              **BUCHANAN INGERSOLL & ROONEY PC**
                                              Incorporated in Pennsylvania
                                              550 Broad Street, Suite 810
                                              Newark, New Jersey 07102
                                              T: 973-273-9800
                                              F: 973-273-9430
                                              christopher.dalton@bipc.com
                                              argia.dimarco@bipc.co

                                              **Attorneys for Plaintiff,**
                                                **Shamrock Realty Inc. d/b/a Ocean Pointe, Realtors**

# EXHIBIT 1



# United States of America
### United States Patent and Trademark Office

## OCEAN POINTE, REALTORS

**Reg. No. 5,506,140**

**Registered Jul. 03, 2018**

**Int. Cl.: 36**

**Service Mark**

**Principal Register**

Shamrock Realty Inc. (NEW JERSEY CORPORATION), DBA Ocean Pointe
555 Washington Blvd
Sea Girt, NEW JERSEY 08750

CLASS 36: Residential real estate listing on a multiple listing service; Real estate rental services, namely, rental of residential housing listed on a multiple listing service; Residential real estate agency services

FIRST USE 11-30-1992; IN COMMERCE 12-21-1996

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR.

SER. NO. 87-453,315, FILED 05-17-2017

Director of the United States
Patent and Trademark Office